JUDGE ABRAMS 15 CV 01374

**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison G. Lobban (AL 1020)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700

RECEIVED
FEB 25 2015
U.S.D.C. S.D. N.Y.
CASHIERS

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**CARLOS DECASTRO, STEPHANIE COOPER, RUDY MARTINEZ, RAFAEL FERREIRA, ABEL ALARCON, and KONRAD WROBLEWSKI Individually and on Behalf of All Others Similarly Situated,**

**Plaintiffs,**

**-against-**

**TIMELESS HOSPITALITY GROUP, LLC, BARRIQUE STAMFORD, LLC, DOPPIO HUDSON STREET LLC, DOPPIO LLC, HARRY ARMON, LOUIS BARRESI, JOSEPH BARRESI, THOMAS PESCUMA and JOHN DOES #1-5, Jointly and Severally,**

**Defendants.**

**CLASS & COLLECTIVE ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Carlos deCastro, Stephanie Cooper, Rudy Martinez, Rafael Ferreira, Abel Alarcon, and Konrad Wroblewski (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are current and former kitchen employees, servers and managers at Defendants' restaurants located in New York and Connecticut. Plaintiffs bring this action to recover unpaid minimum wages and overtime premium pay owed to them pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and the Connecticut Minimum Wage Act ("CMWA"), Conn. Gen. Stat. §§ 31-58 *et seq*. Plaintiffs also bring claims for unpaid spread-of-hours premiums, unreimbursed business expenses, unlawfully withheld gratuities, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq*. and the supporting regulations. In addition, Plaintiffs bring claims for unreimbursed business expenses, unlawfully withheld gratuities, and for failure to provide wage statements under CMWA §§ 31-58 *et seq*. and the supporting regulations.

2. Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants.

3. Plaintiffs Wroblewski, Martinez, and Alarcon bring their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 ("Rule 23") class of all non-managerial restaurant employees who worked for Defendants in New York. Plaintiff Wroblewski also brings his NYLL unlawfully withheld gratuities claim on behalf of himself and subclass of all employees who worked for Defendants in New York in tipped positions, including, without limitation, servers, bussers, and bartenders.

4. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Martinez and Alarcon bring their CMWA claims on behalf of themselves and a Rule 23 class of all non-managerial restaurant employees who worked for Defendants in Connecticut. Plaintiffs deCastro, Scorese, Cooper and

Ferreira bring their CMWA unlawfully withheld gratuities claims on behalf of themselves and a subclass of all employees who worked for Defendants in Connecticut in tipped positions, including, without limitation, servers, bussers, and bartenders.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

**Plaintiffs:**

8. Plaintiffs Carlos deCastro ("deCastro"), Stephanie Cooper ("Cooper"), Rudy Martinez ("Martinez"), Abel Alarcon ("Alarcon"), Rafael Ferreira ("Ferreira"), and Konrad Wroblewski ("Wroblewski") have been, at all relevant times, adult individuals residing in New York and Connecticut.

9. Throughout the relevant time period, Plaintiffs performed work for Defendants at their restaurants including: Doppio Restaurant located at 581 Hudson Street, New York, NY 10014; Doppio Restaurant located at 41 East Elm St., Greenwich, Connecticut 06830; and Barrique Restaurant located at 188 Bedford St., Stamford, CT 06901.

10. Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. §

216(b), and their written consent forms are attached hereto and incorporated by reference.

**Defendants:**

11. Upon information and belief, Doppio Hudson Street LLC is an active New York State Limited Liability Company which operates the Doppio Restaurant at 581 Hudson Street, New York, NY 10014 (hereinafter "Doppio NYC").

12. Upon information and belief, Barrique Stamford, LLC is an active New York State Limited Liability Corporation which operates the Barrique Restaurant at 188 Bedford St., Stamford, CT 06901 (hereinafter "Barrique").

13. Upon information and belief, Doppio LLC is an active Connecticut State Limited Liability Company which operates the Doppio Restaurant at 41 East Elm St., Greenwich, Connecticut 06830 (hereinafter "Doppio Greenwich").

14. Upon information and belief, Timeless Hospitality Group ("Timeless" and, collectively with Doppio NYC, Barrique, and Doppio Greenwich "Corporate Defendants") is an active New York State Limited Liability Company with a principle place of business at 24 Clinton Avenue, Huntington, New York 11743.

15. At all relevant times, the Corporate Defendants operated together as a single business enterprise utilizing the same practices and policies.

16. Upon information and belief, John Doe Corps #1-5 represent the corporate entities that operate Defendants' other restaurants throughout New York and Connecticut, which are operated utilizing the same policies and practices as Doppio NYC, Doppio Greenwich and Barrique. John Doe Corps #1-5 and the Corporate Defendants are hereinafter referred to collectively as the "Doppio Enterprise."

17. Upon information and belief, Timeless is the LLC under which the Individual

Defendants run the business of the Doppio Enterprise.

18.     Defendant Louis Barresi ("L. Barresi") is an owner, operator and manager of the Corporate Defendants, who sets the Corporate Defendants' payroll practices and policies, including those complained of herein. Throughout the relevant time period, L. Barresi was in charge of hiring and firing employees, setting schedules and wage rates, determining the Corporate Defendants' policies with respect to payroll and otherwise running the business of Corporate Defendants.

19.     Defendant Joseph Barresi ("J. Barresi") is an owner, operator and manager of the Corporate Defendants, who sets the Corporate Defendants' payroll practices and policies, including those complained of herein. Throughout the relevant time period, J. Barresi was in charge of hiring and firing employees, setting schedules and wage rates, determining the Corporate Defendants' policies with respect to payroll and otherwise running the business of Corporate Defendants.

20.     Defendant Harry Armon ("Armon") is, upon information and belief, one of the four (4) largest shareholders and an owner, operator and manager of the Corporate Defendants, who sets the Corporate Defendants' payroll practices and policies, including those complained of herein.

21.     Defendant Thomas Pescuma ("Pescuma" and, collectively with L. Barresi, J. Barresi and Armon, the "Individual Defendants" and, collectively with Corporate Defendants, "Defendants") is an owner, operator and manager of the Corporate Defendants, who sets the Corporate Defendants' payroll practices and policies, including those complained of herein. Throughout the relevant time period, Pescuma was in charge of hiring and firing employees, setting schedules and wage rates, determining the Corporate Defendants' policies with respect to

payroll and otherwise running the business of Corporate Defendants.

22.     Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees and are "employers" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, as well as the NYLL § 2 and the regulations thereunder, and CMWA § 31-58(e) and are jointly and severally liable with the Corporate Defendants.

23.     At all relevant times. Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

24.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiffs and each of the Collective Action members within the meaning of the FLSA.

25.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the NYLL Server and Kitchen Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

26.     At all relevant times, Plaintiffs, the opt-in plaintiffs and the CMWA Server and Kitchen Class Members were employed by Defendants within the meaning of CMWA, §§ 31-58.

27.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

28.     At all relevant times, the Corporate Defendants have used goods and materials produced in interstate commerce, and have employed two or more individuals who handled these goods and materials.

**COLLECTIVE ACTION ALLEGATIONS**

29. Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First and Second Causes of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by Defendants at any time since February 25, 2012 and through the entry of judgment in this case (the "Collective Action Period") who worked as servers, bussers, managers, kitchen employees and all other employees with a similar compensation structure (the "Collective Action Members").

30. A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay minimum wage for all hours worked and failing to pay overtime premiums for work performed in excess of forty (40) hours each week. As a result of these policies, Plaintiffs and the Collective Action Members did not receive the legally-required minimum wages for all hours worked and overtime premium payments for all hours worked in excess of forty (40) hours per week.

31. Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

**CLASS ACTION ALLEGATIONS**

**NEW YORK CLASS**

32. Pursuant to the NYLL, Plaintiffs Wroblewski, Martinez and Alarcon bring their Third through Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in New York at any time since February 25, 2009 and through the entry of judgment in this case (the "New York Class Period") who worked as non-managerial restaurant employees (the "New York Class Members").

**NEW YORK TIPPED SUBCLASS**

33.     Pursuant to the NYLL, Plaintiff Wroblewski brings his Ninth Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following subclass of the New York Class:

> All persons employed by Defendants in New York at any time since February 25, 2009 and through the entry of judgment in this case (the "New York Tipped Subclass Period") who worked in tipped positions including, without limitation, servers, bussers, and bartenders (the "New York Tipped Subclass Members").

34.     The New York Class Members and New York Tipped Subclass Members are readily ascertainable. The number and identity of the New York Class Members and New York Tipped Subclass Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure

35.     The New York Class Members and New York Tipped Subclass Members are each so numerous that joinder of all members is impracticable.

36.     Upon information and belief, there are well in excess of forty (40) class members in both the New York Class and New York Tipped Subclass.

37.     There are questions of law and fact common to the claims of Plaintiffs and the claims of the New York Class and New York Tipped Subclass. Such common questions will determine Defendants' liability to all (or nearly all) New York Class Members and New York Tipped Subclass Members. These common questions for the Plaintiffs and New York Class Members include whether Defendants had a corporate policy of: failing to pay at least the statutory minimum wage for all hours worked; failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; failing to pay spread-of-hours

premiums for days in which employees worked in excess of ten (10) hours or split shifts; failing to provide proper wage statements to employees; failing to reimburse for the cost of bounced checks; and failing to provide proper wage notices. These common questions for the Plaintiffs and New York Tipped Subclass Members include whether Defendants had a corporate policy of: unlawfully withholding gratuities; and distributing gratuities to non-tip-eligible employees. The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all New York Class Members and New York Tipped Subclass Members for their NYLL wage and hour violations.

38.     Plaintiff's claims are typical of the New York Class Members' and New York Tipped Subclass Members' claims. Plaintiffs, like all New York Class Members and New York Tipped Subclass Members, were employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs Wroblewski, Martinez and Alarcon, like all New York Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked and was not paid overtime premium pay for hours worked over forty (40) hours in a given workweek. Plaintiff Wroblewski, like all New York Tipped Subclass Members, was, *inter alia*, not notified of Defendants' reliance on the tip-credit to lower the minimum wage and was not paid all of the gratuities that he earned. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all New York Class Members and New York Tipped Subclass Members.

39.     Plaintiffs and their Counsel will fairly and adequately represent the New York Class and New York Tipped Subclass. There are no conflicts between Plaintiffs and the New York Class Members and New York Tipped Subclass Members, and Plaintiffs bring this lawsuit out of a desire to help all New York Class Members and New York Tipped Subclass Members,

not merely out of a desire to recover their own damages.

40. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the New York Class Members and New York Tipped Subclass Members.

41. The questions of law and fact common to the New York Class and New York Tipped Subclass predominate over any questions solely affecting the individual members of the New York Class and New York Tipped Subclass. These common questions include, but are not limited to:

    a.  whether Defendants employed Plaintiffs and the New York Class Members and New York Tipped Subclass Members within the meaning of the NYLL;

    b.  whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the New York Class Members;

    c.  whether Defendants failed and/or refused to pay Plaintiffs and the New York Class Members minimum wage for all hours worked;

    d.  whether Defendants failed and/or refused to pay Plaintiffs and the New York Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

    e.  whether Defendants failed to pay Plaintiffs and the New York Class Members an extra hour of minimum wage when working shifts in excess of ten (10) hours or split shifts;

    f.  whether Defendants illegally retained gratuities left by customers and failed to pay all such gratuities to Plaintiffs and the New York Tipped Subclass Members;

    g.  whether Defendants failed to provide Plaintiffs and the New York Tipped Subclass

Members with proper notification of reliance on the tip-credit;

h. whether Defendants failed to provide Plaintiffs and the New York Class Members with a proper statement of wages with every wage payment as required by the NYLL;

i. whether Defendants failed to provide proper wage notice to Plaintiffs and New York Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

j. whether Defendants failed to reimburse Plaintiffs and New York Class Members for the cost of bounced paychecks;

k. whether Defendants' failure to properly pay Plaintiffs and the New York Class Members lacked a good faith basis; and

l. whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

42. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

43. Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

44. The individual members of the New York Class and New York Tipped Subclass have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

**CONNECTICUT CLASS**

45. Pursuant to the NYLL, Plaintiffs deCastro, Scorese, Cooper, Ferreira, Martinez and Alarcon bring their Tenth through Thirteenth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants in Connecticut at any time since February 25, 2013 and through the entry of judgment in this case (the "Connecticut Class Period") who worked as non-managerial restaurant employees (the "Connecticut Class Members").

**CONNECTICUT TIPPED SUBCLASS**

46. Pursuant to the CMWA, Plaintiffs deCastro, Scorese, Cooper and Ferreira bring their Fourteenth Cause of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All persons employed by Defendants in Connecticut at any time since February 25, 2013 and through the entry of judgment in this case (the "Connecticut Tipped Subclass Period") who worked in tipped positions including, without limitation, servers, bussers, and bartenders (the "Connecticut Tipped Subclass Members").

47. The Connecticut Class Members and Connecticut Tipped Subclass Members are readily ascertainable. The number and identity of the Connecticut Class Members and Connecticut Tipped Subclass Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure

48. The Connecticut Class Members and Connecticut Tipped Subclass Members are so numerous that joinder of all members is impracticable.

49. Upon information and belief, there are well in excess of forty (40) class members in both the Connecticut Class and the Connecticut Tipped Subclass.

50. There are questions of law and fact common to the claims of Plaintiffs and the claims of the Connecticut Class and Connecticut Tipped Subclass. Such common questions will determine Defendants' liability to all (or nearly all) Connecticut Class Members and Connecticut Tipped Subclass Members. These common questions for the Connecticut Class include whether Defendants had a corporate policy of: failing to pay at least the statutory minimum wage for all hours worked; failing to pay overtime premiums when employees worked in excess of forty (40) hours per week; failing to reimburse for bounced checks; and failing to provide proper wage statements to employees. These common questions for the Connecticut Tipped Subclass include whether Defendants had a corporate policy of: unlawfully withholding gratuities; and distributing gratuities to non-tip-eligible employees. The answer to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Connecticut Class Members and Connecticut Tipped Subclass Members for their CMWA wage and hour violations.

51. Plaintiffs' claims are typical of the Connecticut Class Members' and Connecticut Tipped Subclass Members' claims. Plaintiffs, like all Connecticut Class Members and Connecticut Tipped Subclass Members, were employees of Defendants who worked for Defendants pursuant to their corporate policies. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Martinez and Alarcon, like all Connecticut Class Members, were, *inter alia*, paid less than the statutory minimum wage for all hours worked and were not paid overtime premium pay for hours worked over forty (40) hours in a given workweek. Plaintiffs deCastro, Scorese, Cooper and Ferreira, like all Connecticut Tipped Subclass Members, were, *inter alia*, not paid all gratuities they earned. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Connecticut Class Members and Connecticut Tipped

Subclass Members.

52. Plaintiffs and their Counsel will fairly and adequately represent the Connecticut Class and Connecticut Tipped Subclass. There are no conflicts between Plaintiffs and the Connecticut Class Members and Connecticut Tipped Subclass Members, and Plaintiffs bring this lawsuit out of a desire to help all Connecticut Class Members and Connecticut Tipped Subclass Members, not merely out of a desire to recover their own damages.

53. Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Connecticut Class Members and Connecticut Tipped Subclass Members.

54. The questions of law and fact common to the Connecticut Class and Connecticut Tipped Subclass predominate over any questions solely affecting the individual members of the Connecticut Class and Connecticut Tipped Subclass. These common questions include, but are not limited to:

a. whether Defendants employed Plaintiffs and the Connecticut Class Members and Connecticut Tipped Subclass Members within the meaning of the CMWA;

b. whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Connecticut Class Members;

c. whether Defendants failed and/or refused to pay Plaintiffs and the Connecticut Class Members minimum wage for all hours worked;

d. whether Defendants failed and/or refused to pay Plaintiffs and the Connecticut Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e. whether Defendants illegally retained gratuities left by customers and failed to pay all

such gratuities to Plaintiffs and Connecticut Tipped Subclass Members;

f.  whether Defendants failed to provide Plaintiffs and the Connecticut Tipped Class Members with proper notification of their reliance on the tip-credit;

g.  whether Defendants failed to provide Plaintiffs and the Connecticut Class Members with a proper statement of wages with every wage payment as required by the CMWA;

h.  whether Defendants failed to reimburse Plaintiffs and the Connecticut Class Members and Connecticut Tipped Subclass Members for bounced paychecks;

i.  whether Defendants' failure to properly pay Plaintiffs and the Connecticut Class Members and Connecticut Tipped Subclass Members lacked a good faith basis; and

j.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

55.   A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

56.   Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendant.

57.   The individual members of the Connecticut Class and Connecticut Tipped Subclass have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Restaurants**

58. At all relevant times, Defendants have been in the restaurant and hospitality business. Upon information and belief, Defendants currently own, operate, and manage restaurants in at least six (6) locations throughout New York and Connecticut, including: Doppio Greenwich at 41 East Elm Street, Greenwich, CT 06830; Doppio NYC at 581 Hudson Street, New York, NY 10014; Barrique at 188 Bedford St., Stamford, CT 06901; Doppio at 24 Clinton Avenue, Huntington, NY 11743 (operated by Doppio East Holdings, LLC); and Char Restaurant at 18 Clinton Avenue, Huntington, NY 11743.

59. Defendants own, operate, and manage these restaurants, including Doppio NYC, Doppio Greenwich, and Barrique, as a single integrated business enterprise using the same business practices and policies in all locations.

60. Defendants' operations are interrelated and unified.

61. According to Defendants' website, http://timelesshospitalitygroup.com/, "Timeless Hospitality Group was founded by Louis Barresi, Tom Pescuma, and Harry Armon with the intention of providing people with what they enjoy – good food, wine and service. The group had the vision and inspiration to rollout an already successful restaurant concept into multiple locations."

62. Upon information and belief, the restaurants in the Doppio Enterprise employ their staff interchangeably.

**Plaintiffs' Work for Defendants**

63. Plaintiff deCastro worked for Defendants as a server from in or around September 2011 through in or around June 2014 (the "deCastro Employment Period").

64. From in or around September 2011 through in or around July 2013, deCastro worked solely at Doppio Greenwich.

65. From in or around July 2013 through in or around December 2013, deCastro worked three (3) days per week at Doppio Greenwich and two (2) days per week at Barrique.

66. From in or around January 2014 throughout the remainder of the deCastro Employment Period, deCastro worked four (4) days per week at Barrique and one to two (1-2) days per week at Doppio Greenwich.

67. Throughout the deCastro Employment Period, Plaintiff deCastro typically worked five (5) days per week, up to around forty (40) hours per week.

68. Throughout the deCastro Employment Period, for his work, Plaintiff deCastro was told he would be paid five dollars ($5.00) per hour plus tips.

69. From the beginning of the deCastro Employment Period through in or around November 2011, deCastro and Defendants' other employees were paid by check for the hours worked and by cash for tips.

70. When deCastro was paid in check, the check would often bounce and deCastro would be charged a fee per bounced check by his bank. Defendants did not reimburse deCastro for all of the bounced check fees.

71. When deCastro worked at Doppio Greenwich, deCastro and the other servers were required to tip-out fifteen percent of their tips (15%) to the bussers and fifteen percent (15%) of their tips to the "bartenders," however, there were rarely any bartenders on duty and, if there was someone behind the bar, it would be one of the owners, either Defendant J. Barressi or L. Barressi.

72. In addition, deCastro would never be paid the full amount of his tips. He knows

this because he would sometimes keep track of his tips and would not be paid the full amount of tips he earned less the thirty percent (30%) he was required to tip out.

73. Plaintiff deCastro was not paid for all hours worked and on average would be paid two (2) hours less than he worked each week.

74. During the time deCastro worked for Barrique, Defendants would not pay him on time and would often hold his pay for as long as four (4) weeks.

75. Defendants would take "taxes" out of deCastro's pay but would not pay the full amount of "taxes" to the IRS. DeCastro knows this because his W2 provided by Defendants would be much lower than the amount he was actually paid by Defendants during the year.

76. In addition to his unpaid wages throughout his employment, Defendants still owe deCastro his paycheck for his last week worked, which amounts to approximately three hundred and fifty dollars ($350.00) in unpaid wages.

77. Defendants did not provide deCastro with a wage statement for his pay for all weeks he worked for them.

78. Plaintiff Cooper worked as a bartender and server at Barrique from in or around March 2013 to in or around March 2014 and then again in or around June 2014 to August 2014 (the "Cooper Employment Period").

79. Throughout the Cooper Employment Period, Cooper typically worked five (5) days per week from 11:00 am to 11:00 pm on the weekdays and from 11:00 am until 2:00 am on Thursday (in the summer) and Friday and Saturday nights, for a total of approximately fifty (50) hours per week, and sometimes more.

80. Throughout the Cooper Employment Period, Cooper was paid the tipped minimum wage plus tips.

81.    Cooper was paid via paycheck through a payroll company from in or around March 2013 through in or around August or September 2013 with paystubs. Afterward, she was paid by personal check or cash, without a paystub.

82.    When Cooper was paid by either payroll or personal check, the checks often bounced, resulting in a bank fee of twelve to twenty dollars ($12.00-$20.00) per bounced check. Defendants failed to reimburse Cooper the fees charged by the bank for the bounced checks.

83.    Defendants still owe Cooper approximately one thousand five hundred dollars ($1,500.00) for unpaid wages aside from her other wage claims outlined herein.

84.    Defendants failed to pay Cooper all of her tips she earned throughout the Cooper Employment Period.

85.    At the end of her shift, Cooper and the other servers were required to give a manager or L. Barressi their tips at the end of the evening. While L. Barressi told Cooper and the other servers that he was tipping out the food runners and bussers from their tips, this was untrue because the food runners and bussers told Cooper they were not receiving any tips. Due to this practice, beginning in or around November 2013, Cooper and the other servers refused to give the managers or owners their tips.

86.    Cooper was not paid time and a half for all hours worked over forty (40) in a given workweek. She knows this because her paystubs would often show that she was receiving straight-time for all hours worked.

87.    There was a POS system in Barrique, and Cooper would clock-in and clock-out, however, Cooper and other servers was not paid for all hours that they worked in the week.

88.    Defendants failed to pay Cooper on a timely basis and paychecks were exceedingly late, if at all.

89. Plaintiff Martinez worked as the head cook in Defendants' Barrique restaurant from in or around 2011 until in or around September 2014 and also worked at Defendants' Doppio NYC restaurant intermittently from in or around 2013 until in or around September 2014 (the "Martinez Employment Period").

90. Throughout the Martinez Employment Period, Martinez was required to work six (6) days per week from in or around ten (10:00 am) in the morning until in or around eleven in the evening (11:00 pm) for a total of approximately seventy-eight (78) hours per week.

91. Throughout the Martinez Employment Period, Martinez was paid one thousand and one hundred dollars ($1,100.00) per week.

92. If Martinez worked less than his scheduled six (6) per week, he would be paid less than one thousand and one hundred dollars ($1,100.00) for the week.

93. If Martinez worked more than his scheduled six (6) days per week, he would not be paid more.

94. Martinez was either paid fully in cash or half in check and half in cash.

95. When Martinez was paid in check, the checks would often bounce, which would result in a bank fee of thirty-six dollars ($36.00) per bounced check.

96. Martinez was not always reimbursed the cost of the bounced check fee.

97. Martinez was not paid overtime for hours worked over forty (40) in a given workweek.

98. Martinez was not paid overtime for work performed on a seventh consecutive day.

99. Defendants did not provide Martinez with a wage statement with his weekly pay.

100. Defendants did not have Martinez clock-in and clock-out or otherwise track his

time.

101. Defendants did not provide Martinez with a wage notice on the day of hire or on February 1 of each year.

102. Plaintiff Ferreira worked as a server and assistant manager at Barrique from in or around March 2012 through in or around March 2013 (the "Ferreira Employment Period").

103. Throughout the Ferreira Employment Period, Ferreira typically worked from Tuesdays through Saturdays as a server and Sundays as an Assistant Manager.

104. As an assistant manager, Ferreira was paid a flat rate of one hundred dollars ($100.00) for working from open to close, from approximately nine-thirty in the morning (9:30 am) until approximately eleven in the evening (11:00 pm).

105. As a server, Ferreira was paid approximately five dollars and eighty-nine cents per hour ($5.89) plus tips.

106. As a server, Ferreira would work either a double shift, from 9:30 am through approximately 11:30 pm or just the dinner shift, from 3:00 pm until 11:30 pm, for a total of approximately sixty-five (65) hours per week as a server.

107. Ferreira was paid either by paychecks or by personal check, but the checks often bounced.

108. Ferreira's bank charged him thirty dollars ($30.00) for bounced checks, and Defendants did not always reimburse Ferreira for the bounced check fees.

109. Defendants never provided Ferreira with pay for several weeks of work, such that they still owe Ferreira approximately eight thousand dollars ($8,000.00) for unpaid wages and tips, aside from his other wage claims outlined herein.

110. Plaintiff Alarcon worked as a cook in Defendants' Doppio NYC and Barrique

restaurants from in or around July 2013 through in or around July 2014 (the "Alarcon Employment Period").

111.   Plaintiff Alarcon worked at Barrique from in or around July 2013 through in or around March 2014.

112.   Plaintiff Alarcon worked at Doppio NYC from in or around April 2014 through in or around July 2014.

113.   From the beginning of the Alarcon Employment Period through in or around May 2014, Alarcon would work seven (7) days per week from eleven in the morning (11:00 am) to eleven in the evening (11:00 pm), for a total of eighty-four (84) hours per week.

114.   From in or around May 2014 throughout the remainder of the Alarcon Employment Period, Alarcon was required to work six (6) days per week from ten or eleven in the morning (10:00 am - 11:00 am) to ten or eleven in the evening (10:00 pm - 11:00 pm), for a total of approximately seventy-two (72) hours per week.

115.   Throughout the Alarcon Employment Period, Alarcon was paid nine hundred dollars ($900.00) per week if he worked the full eighty-four (84) or seventy-two (72) hours that week. If Alarcon worked more than his full schedule in a week, he would still only be paid nine-hundred dollars ($900.00) for that week.

116.   Alarcon was told that he would be paid seventy-five dollars ($75.00) less per each half day that he did not work.

117.   Alarcon was paid sometimes in cash and sometimes by personal check.

118.   When Alarcon was paid in check, the checks would often bounce.

119.   Alarcon was not paid overtime at time and a half his regular hourly rate for hours worked over forty (40) in a given workweek.

120.    Alarcon was not paid overtime for work performed on a seventh consecutive day.

121.    Defendants did not provide Alarcon with a wage statement with his weekly pay.

122.    Defendants did not have Alarcon clock-in and clock-out or otherwise track his time.

123.    Plaintiff Wroblewski worked as a server at Barrique and Doppio NYC from approximately August 22, 2014 through in or around October 2014 (the "Wroblewski Employment Period").

124.    Wroblewski worked as a server at Barrique from the start of the Wroblewski Employment Period through in or around September 14, 2014.

125.    Wroblewski worked as a server at Doppio NYC from in or around September 15, 2014 throughout the remainder of the Wroblewski Employment Period.

126.    Throughout the Wroblewski Employment Period, Wroblewski typically worked five (5) to six (6) days per week from approxiamtely ten in the morning to eleven in the evening (10:00 am – 11:00 pm), for a total of sixty-five to seventy-eight (65-78) hours per week.

127.    Throughout the Wroblewski Employment Period, Wroblewski was told he would be paid approximately six dollars ($6.00) per hour plus tips.

128.    Defendants failed to pay Wroblewski for hours worked over forty (40) in a given workweek.

129.    Wroblewski was typically paid by personal check without a pay stub or other wage statement detailing the number of hours worked and tips received.

130.    During the Wroblewski Employment Period, three (3) of Wroblewski's paychecks bounced.

131.    Wroblewski was charged fifteen dollars ($15.00) per bounced check, for which

Defendants failed to reimburse him.

132.    Moreover, Defendants have not paid Wroblewski the wages for the bounced checks, which amount to approximately three thousand seven hundred and twenty-eight dollars ($3,728).

**Defendants' Unlawful Corporate Policies**

133.    Although Plaintiffs typically worked in excess of forty (40) hours per week, they did not receive overtime premiums of one and one-half (1.5) her regular hourly rate for hours worked beyond forty (40) in a given workweek. Defendants' failure to pay overtime premiums was a corporate policy that applied to plaintiffs and all New York Class Members, New York Tipped Subclass Members, Connecticut Class Members and Connecticut Tipped Subclass Members working more than forty (40) hours per workweek.

134.    Defendants never provided Plaintiffs with any notice or indication that they were relying on any credit for tipped employees to pay Plaintiffs and the New York Tipped Subclass Members or Connecticut Tipped Subclass Members less than the full minimum wage.

135.    Plaintiffs did not receive proper wage statements with their wage payments. Defendants' failure to provide plaintiffs with proper wage statements was a corporate policy that applied to all New York Class Members and New York Tipped Subclass Members.

136.    Notwithstanding that Plaintiffs and other New York Class Members and New York Tipped Subclass Members frequently worked more than ten (10) hours in a given day, Defendants failed to pay them spread of hours premiums equal to an additional hour of minimum wage for each day working in excess of ten (10) in a given day. Defendants' failure to pay Plaintiffs and New York Class Members and New York Tipped Subclass Members spread of hours premiums was a corporate policy that applied to all of Defendants' employees working

shifts of more than ten (10) hours in one day and/or split shifts.

137.   Plaintiffs Martinez and Alarcon have also spoken with other kitchen employees of Defendants, including other cooks, salad preparers, and dishwashers, who were similarly paid on a purported "salary" basis. Upon information and belief, such employees are required to work well in excess of forty (40) hours per week for their "salary."

138.   Defendants' policies of paying certain employees on a "salary" basis rather than an hourly basis, violated 12 N.Y.C.R.R. § 146-2.5 and the CMWA.

139.   Defendants did not provide Plaintiffs or New York Class Members and New York Tipped Subclass Members with proper wage notices at the time of hire or by February 1 of each year.

140.   Plaintiffs and the New York Class Members, New York Tipped Subclass Members, Connecticut Class Members and Connecticut Tipped Subclass Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages and overtime premiums, regardless of which restaurant in the Doppio Enterprise they worked in.

141.   Plaintiffs' work was performed in the normal course of Defendants' business and was integrated into Defendants' business.

142.   The work performed by Plaintiffs required little skill and no capital investment.

143.   Throughout the New York Class Period, New York Tipped Subclass Class Period, Connecticut Class Period and Connecticut Tipped Subclass Class Periods and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment. Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half when working in excess of forty (40) hours per week. Additionally, such

individuals were not provided spread of hours premiums while working shifts in excess of ten (10) hours, nor were they provided with proper wage notices upon being hired or by February 1 of each year, or proper wage statements with each of their wage payments.

144. The exact number of such similarly situated individuals is presently unknown but is believed to be well in excess of forty (40) individuals and can be ascertained through appropriate discovery.

145. Upon information and belief, throughout the New York Class Period, New York Tipped Subclass Class Period, Connecticut Class Period and Connecticut Tipped Subclass Class Periods and continuing until today, defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

146. Upon information and belief, throughout the New York Class Period, New York Tipped Subclass Class Period, Connecticut Class Period and Connecticut Tipped Subclass Class Periods and continuing until today, defendants failed to post or keep posted notices explaining the minimum wage and overtime pay rights provided by the FLSA, New York Labor Law or Connecticut Minimum Wage Act.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID MINIMUM WAGE**
**(On Behalf of Plaintiffs and the Collective)**

147. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

148. By failing to pay minimum wage for all hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206 and 215(a)(2).

149. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

150. Defendants' failure to pay minimum wages for all hours worked caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. By failing to pay Plaintiffs and the Collective Action Members the tipped minimum wage for all hours worked, Defendants lose the ability to utilize a tip credit against the FLSA's minimum wage. Therefore, Plaintiffs and the Collective Action Members are entitled to recover from Defendants their full unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(On Behalf of Plaintiffs and the Collective)**

151. Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

152. By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

153. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

154. Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(On Behalf Of the New York Class Members)**

155. Plaintiffs Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

156. Defendants willfully violated Plaintiffs' and New York Class Members' rights by failing to pay minimum wage for all hours worked, in violated of the NYLL and regulations promulgated thereunder.

157. Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the New York Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**

**(On Behalf Of the New York Class Members)**

158. Plaintiffs Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

159. Defendants willfully violated Plaintiffs' and the New York Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

160. Defendants' failure to pay overtime premium compensation caused Plaintiffs and the New York Class Members to suffer loss of wages and interest thereon. Plaintiffs and the New York Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS**
**(On Behalf Of the New York Class Members)**

161. Plaintiff Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

162. Defendants willfully violated Plaintiffs' and the New York Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day, in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

163. Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the New York Class Members to suffer loss of wages and interest thereon. Plaintiffs and the New York Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(On Behalf Of the New York Class Members)**

164. Plaintiffs Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

165. Defendants have willfully failed to supply Plaintiffs and the New York Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the New York Class Members as their primary language, containing Plaintiffs' and New York Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other: hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

166. Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each

workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENT**
**(On Behalf Of the New York Class Members)**

167. Plaintiffs Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

168. Defendants have willfully failed to supply Plaintiffs and New York Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable: the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

169. Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, up to a maximum of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**EIGHTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNREIMBURSED BUSINESS EXPENSES**

**(On Behalf Of the New York Class Members)**

170. Plaintiffs Wroblewski, Martinez and Alarcon, on behalf of themselves and the New York Class Members, repeat, reallege and incorporate by reference the foregoing allegations as if set forth fully and again herein.

171. Defendants often paid Plaintiffs and New York Class Members in paycheck or personal check without having sufficient funds in their bank account. As a result, the checks would bounce, and Plaintiffs and New York Class Members would incur a fee through their bank. Defendants failed to reimburse Plaintiffs for the bounced check fees. Accordingly, Defendants are required to compensate Plaintiffs for all business expenses that Defendants required Plaintiffs to incur without reimbursement.

172. The Defendants' NYLL violations have caused Plaintiffs and New York Class Members irreparable harm for which there is no adequate remedy at law.

173. Due to Defendants' NYLL violations, Plaintiffs and the New York Class Members are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the New York Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL § 663(1) *et seq.* and § 196-d.

**NINTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNLAWFUL WITHOLDING OF GRATUITIES**
**(On Behalf Of the New York Tipped Subclass Members)**

174. Plaintiff Wroblewski, on behalf of himself and the New York Tipped Subclass Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

175. Defendants have failed to compensate Plaintiff and the New York Tipped Subclass Members for all gratuities earned by withholding gratuities left by patrons for Plaintiff and the New York Tipped Subclass, in violation of § 196-d of the New York Labor Law. Accordingly, Defendants are now required to compensate Plaintiff and the New York Tipped Subclass Members for all gratuities wrongfully withheld by Defendants.

176. The Defendants' NYLL violations have caused Plaintiff and the New York Tipped Subclass Members irreparable harm for which there is no adequate remedy at law.

177. Due to the Defendants' NYLL violations, Plaintiff and the New York Tipped Subclass Members are entitled to recover from Defendants their unpaid gratuities, liquidated/punitive damages, pre and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to New York Labor Law § 663(1) *et al* and § 196-d.

**TENTH CAUSE OF ACTION**
**<u>CONNECTICUT MINIMUM WAGE ACT – UNPAID MINIMUM WAGE</u>**
**<u>(On Behalf Of the Connecticut Class Members)</u>**

178. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Alarcon, and Martinez, on behalf of themselves and the Connecticut Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

179. Defendants willfully violated Plaintiffs' and Connecticut Class Members' rights by failing to pay minimum wage for all hours worked, in violated of the CMWA and regulations

promulgated thereunder.

180. Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Connecticut Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Connecticut Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to CMWA §§ 31-58 *et seq.*

**ELEVENTH CAUSE OF ACTION**
**CONNECTICUT MINIMUM WAGE ACT – UNPAID OVERTIME WAGE**
**(On Behalf Of the Connecticut Class Members)**

181. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Alarcon, and Martinez, on behalf of themselves and the Connecticut Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

182. Defendants willfully violated Plaintiffs' and the Connecticut Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for: (1) hours worked in excess of 40 each week; and (2) work performed on a seventh (7th) consecutive day, in violation of the CMWA and regulations promulgated thereunder.

183. Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Connecticut Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Connecticut Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to CMWA §§ 31-76 *et seq.*

**TWELFTH CAUSE OF ACTION**
**CONNECTICUT MINIMUM WAGE ACT – UNREIMBURSED BUSINESS EXPENSES**
**(On Behalf Of the Connecticut Class Members)**

184. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Alarcon and Martinez, on behalf of themselves and the Connecticut Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

185. Defendants often paid Plaintiffs and the Connecticut Class Members in paycheck or personal check without having sufficient funds in their bank account. As a result, the checks bounced, and Plaintiffs and the Connecticut Class Members would incur a fee through their bank. Defendants failed to reimburse Plaintiffs or the Connecticut Class Members for the bounced check fees. Accordingly, Defendants are required to compensate Plaintiffs and the Connecticut Class Members for all business expenses that Defendants required them to incur without reimbursement.

186. The Defendants' CMWA violations have caused Plaintiffs and Connecticut Class Members irreparable harm for which there is no adequate remedy at law.

187. Due to Defendants' CMWA violations, Plaintiffs and the Connecticut Class Members are entitled to recover damages from Defendants in the amount of Defendants' unreimbursed business expenses for which Plaintiffs and the Connecticut Class Members incurred, plus liquidated damages, damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees and costs and disbursements of the action pursuant to CMWA.

**THIRTEENTH CAUSE OF ACTION**
**CONNECTICUT GENERAL STATUTE – WAGE STATEMENT**
**(On Behalf Of the Connecticut Class Members)**

188. Plaintiffs deCastro, Scorese, Cooper, Ferreira, Alarcon, and Martinez, on behalf of themselves and the and the Connecticut Class Members Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

189. Defendants failed to provide Plaintiffs and the and the Connecticut Class Members with an earnings statement/paystub showing hours worked, gross earnings, showing straight time and overtime earnings, and itemized deductions with net earnings, in violation of Conn. Gen. Stat. § 31-13a.

190. Due to Defendants' violations of Conn. Gen. Stat. § 31-13a, Plaintiffs and the and the Connecticut Class Members are entitled to recover from Defendants for each workweek that the violations occurred or continue to occur, liquidated damages, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTEENTH CAUSE OF ACTION**
**CONNECTICUT MINIMUM WAGE ACT – UNLAWFULLY HELD GRATUITIES**
**(On Behalf Of the Connecticut Tipped Subclass Members)**

191. Plaintiffs deCastro, Scorese, Cooper and Ferreira, on behalf of themselves and the Connecticut Tipped Subclass Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

192. Defendants have failed to compensate Plaintiffs and the Connecticut Tipped Subclass Members for all gratuities earned by withholding gratuities left by patrons for Plaintiffs and the Connecticut Tipped Subclass, in violation of the CMWA. Accordingly, Defendants are now required to compensate Plaintiffs and the Connecticut Tipped Subclass for all gratuities wrongfully withheld by Defendants.

193. The Defendants' CMWA violations have caused Plaintiff and the Connecticut

Tipped Subclass irreparable harm for which there is no adequate remedy at law.

194. Due to the Defendants' CMWA violations, Plaintiff and the Connecticut Tipped Subclass are entitled to recover from Defendants their unpaid gratuities, liquidated/punitive damages, pre and post-judgment interest, reasonable attorneys' fees, and costs and disbursements of the action pursuant to the CMWA.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and New York Class Members, New York Tipped Subclass Members, Connecticut Class Members, Connecticut Tipped Subclass Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the New York Class Members, New York Tipped Subclass Members, Connecticut Class Members and Connecticut Tipped Subclass Members and appointing Plaintiffs and their counsel to represent the New York Class, New York Tipped Subclass, Connecticut Class and Connecticut Tipped Subclass;

c.      An order tolling the statute of limitations;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL and the CMWA;

e.      An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.      An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA, the NYLL, the CMWA and supporting regulations;

g.      An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA, the NYLL, the CMWA and supporting regulations;

h.      An award of actual and liquidated damages for the non-payment of spread-of-hours pay for each split shift and/or shift worked in New York in excess of ten hours;

i.      An award of damages arising out of the non-payment of gratuities;

j.      An award of liquidated damages arising out of the non-payment of gratuities;

k.      An award of damages arising out of unreimbursed business expenses;

l.      An award of liquidated damages arising out of unreimbursed business expenses;

m.      Fifty dollars ($50) per Plaintiff and each of the New York Class Members and New York Tipped Subclass Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of

twenty-five hundred dollars ($2,500) per Plaintiff and each of the New York Class Members and New York Tipped Subclass Members as provided for by NYLL, Article 6 § 198(1)-b;

n.    One hundred dollars ($100) per Plaintiff and each of the New York Class Members and New York Tipped Subclass Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, up to a maximum of twenty-five hundred dollars per Plaintiff and each of the New York Class Members and New York Tipped Subclass Members as provided for by NYLL, Article 6 § 198(1)-d;

o.    An award of prejudgment and post-judgment interest;

p.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

q.    Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
February 25, 2015

**PELTON & ASSOCIATES PC**

By: ______________________

Brent E. Pelton (BP 1055)
Alison G. Lobban (AL 1020)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the FLSA Collective and Classes*

August 25, 2[illegible]

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Timeless Hospitality Group, its restaurants and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signature | Date | Printed Name

August 25, 2014

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Timeless Hospitality Group, its restaurants and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Signature

Date

Printed Name

September 5, 2014

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Timeless Hospitality Group, its restaurants and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

| [signature] | 09/24/2014 | RUDY MARTINEZ |
|---|---|---|
| Signature | Date | Printed Name |

[illegible]

CONSENT TO BECOME PARTY PLAINTIFF

[illegible]

Signature Date Printed Name

September 5, 2014

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Timeless Hospitality Group, its restaurants and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

| [signature] | 11-11-14 | Abel Alarcon |
|---|---|---|
| Signature | Date | Printed Name |

September 5, 2014

**CONSENT TO BECOME PARTY PLAINTIFF**

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Timeless Hospitality Group, its restaurants and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton & Associates PC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

[signature] 09/03/2015 KONRAD WROBLEWSKI

Signature Date Printed Name